### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| A.B. CORP., | ) | 3:22-CV-1474 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUNKIN' DONUTS FRANCHISING, | ) | |
| LLC, | ) | November 30, 2022 |
| *Defendant*. | ) | |

### RULING ON PLAINTIFF'S MOTION FOR INTERIM TEMPORARY RESTRAINING ORDER

Sarala V. Nagala, United States District Judge.

In this diversity action, Plaintiff, A.B. Corp., claims that Defendant, Dunkin' Donuts Franchising, LLC, improperly terminated the parties' franchise agreement in violation of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133e *et seq*. (the "CFA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b *et seq*. ("CUTPA"). Plaintiff has filed two motions for injunctive relief: first, a motion for a preliminary injunction, ECF No. 6, which remains pending until an evidentiary hearing scheduled for December 15, 2022; and second, the present motion for an interim temporary restraining order ("TRO"), ECF No. 19. In both motions, Plaintiff seeks a Court order directing Defendant to restore the parties' franchise agreement and permit Plaintiff to continue using Defendant's trademarks, products, and online customer ordering platform. For the following reasons, the Court DENIES Plaintiff's second motion for a TRO, and it will hold in abeyance Plaintiff's first motion for a preliminary injunction until the scheduled evidentiary hearing.

### I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

The complaint, ECF No. 1-1, sets forth the following facts. On October 5, 2016, Plaintiff and Defendant entered into a twenty-year franchise agreement. Ex. B to Compl., ECF No. 1-1 at

13.   Pursuant to the agreement, Plaintiff operated a Dunkin' Donuts restaurant located at 3040 Main Street in Glastonbury, Connecticut, and Plaintiff used Defendant's trademark and exclusively sold Defendant's products.  Compl. ¶¶ 3, 7.  In turn, the franchise agreement required Plaintiff to "operate under the rules, guidelines, policies, procedures, manuals and other requirements imposed by" the agreement.  *Id.* ¶ 9; *see also* Ex. B to Compl., ECF No. 1-1 at 14, 18–19 (requiring Plaintiff to comply with Defendant's operating standards).  Relevant here, Section 14 of the agreement provided that Plaintiff would be in "default" if it breached any "obligation" under the franchise agreement.  Ex. B to Compl., ECF No. 1-1 at 24.  Section 14.6 stated that Defendant could terminate the franchise agreement, effective immediately, if Plaintiff failed to timely cure a default, unless a notice period is required by law.  *Id.* at 26.  Thereafter, the franchisee must cease operation, no longer represent itself as a franchisee, and cease using Dunkin' Donuts trademarks and products.  *Id.*

Defendant provides certain additional facts relevant to the present motion.[1]  Specifically, on July 15, 2022, Defendant conducted "a routine inspection, known as a Food Safety Review" of Plaintiff's restaurant to ensure compliance with franchise standards.  Pia Decl., ECF No. 26-1, ¶ 12; Ex. B to Pia Decl., ECF No. 26-1 at 29.  Plaintiff's restaurant failed the inspection and received an overall compliance score of 40%.  Ex. B to Pia Decl., ECF No. 26-1 at 29.  On July 27, 2022, Defendant conducted a second Food Safety Review to determine whether Plaintiff improved its compliance with brand standards, but Plaintiff's restaurant again failed the inspection, this time with an overall compliance score of 60%.  Pia Decl., ECF No. 26-1, ¶ 14; Ex. C to Pia Decl., ECF No 26-1 at 50.

---

[1] The Court understands Plaintiff contests whether there was a breach of the franchise agreement justifying termination, and sets forth these facts only as background.

On July 29, 2022, based on the second failed Food Safety Review, Defendant delivered a "Notice of Default and Impending Termination For Failure to Comply with Brand Standards." Ex. D to Pia Decl., ECF No 26-1 at 62. The letter informed Plaintiff that it was in default pursuant to Section 14.1.1 of the franchise agreement and directed Plaintiff to cure the defects within sixty days. *Id.* The letter informed Plaintiff that, if it failed to cure the defects, Defendant "stand[s] ready to take legal action to enforce your compliance with Standards, including without limitation, the termination of" the franchise agreement. *Id.* at 63. Defendant further contends that Plaintiff failed the third Food Safety Review, conducted on October 10, 2022, this time with a score of 62% overall compliance. Pia Decl., ECF No. 26-1 ¶ 19; Ex. E to Pia Decl., ECF No. 26-1 at 76.

Plaintiff alleges that, on October 28, 2022, an entity called "Dunkin Donuts Franchisor LLC" delivered a "Notice of Termination of Franchise Agreement," stating that the franchise agreement between Plaintiff and Defendant was terminated effective immediately. Ex. A to Compl., ECF No. 1-1 at 10. Defendant contends that it sent the termination letter. Pia Decl., ECF No. 26-1 ¶¶ 22–23. The termination letter referenced the default notice dated July 29, 2022, as well as the Food Safety Review conducted on October 10, 2022, and explained that the compliance defects identified in the default notice had not been cured. *Id.* Following the termination notice, Defendant denied Plaintiff access to its online customer ordering platform. Compl. ¶ 14.

On November 15, 2022, Plaintiff filed a two-count complaint in Connecticut state court, claiming that Defendant's improper termination of the franchise agreement violated the CFA and CUTPA. *Id.* ¶¶ 19, 22. At the same time, Plaintiff filed an "Application for Temporary Injunction, Order to Show Cause, and Request for Emergency Hearing," seeking an order "maintaining the status quo pending full and final resolution of" Plaintiff's CFA claim.[2] ECF No. 6 at 2.

---

[2] Plaintiff's two motions requesting injunctive relief pertain only to its CFA claim, not its CUTPA claim.

On November 18, 2022, Defendant removed the action to federal court, invoking the Court's diversity jurisdiction.  Notice of Removal, ECF No. 1.  At a status conference on November 21, 2022, the parties agreed to a briefing schedule on Plaintiff's first motion.  *See* ECF No. 18.  Although the Court scheduled an evidentiary hearing on the motion for December 15, 2022, Plaintiff also sought a temporary restraining order pending resolution of its earlier filed motion for preliminary injunctive relief.  ECF Nos. 18, 19.

## II.    LEGAL STANDARD

### A.   Preliminary Injunctive Relief

Injunctive relief in the form of a TRO or preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (noting that a TRO, "perhaps even more so than a preliminary injunction," is an extraordinary and drastic remedy).  A TRO, like a preliminary injunction, is "never awarded as of right," and the Court must "balance the competing claims of injury and must consider the effect on each part of the granting or withholding of the requested relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation and internal quotation marks omitted). Whether to grant such relief "rests in the sound discretion of the district court."  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

Although governed by the same standard, TROs and preliminary injunctions are distinct procedural devices that serve different purposes.  *See Fairfield Cnty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified*, 557 F. App'x 53 (2d Cir. 2014).  "The purpose of a temporary restraining order is to preserve an existing

situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (citation and internal quotation marks omitted).  "In other words, the [c]ourt must examine whether the movants have demonstrated a threat of irreparable harm that will occur *immediately* to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view." *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367–68 (E.D.N.Y. 2020).  *See also Standard Microsys. Corp. v. Tex. Instruments Inc.*, 916 F.2d 58, 62 (2d Cir. 1990) ("Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm.").  Thus, while the standards governing a temporary restraining order and preliminary injunction are largely the same, in seeking an immediate temporary restraining order the movant must satisfy its burden relative to "the time frame involved." *Omnistone Corp.*, 485 F. Supp. 3d at 367.

A party seeking a TRO, like one seeking a preliminary injunction, must show "(1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore*, 409 F.3d at 510 (citation and internal quotation marks omitted).  The Court must also ensure that the public interest would not be disserved by the issuance of a preliminary injunction.  *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010); *see also Doe v. Univ. of Conn.*, No. 3:20-CV-92 (MPS), 2020 WL 406356, at *1 (D. Conn. Jan. 23, 2020) (quoting *Winter*, 555 U.S. at 20).

A showing of irreparable harm "is essential" to the issuance of a TRO or preliminary injunction.  *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995).  To establish

irreparable harm, the movant must demonstrate "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Id.* When monetary damages are adequate compensation, an injunction should not issue. *JSG Trading Corp.*, 917 F.2d at 79; *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986).

### B.  The Connecticut Franchise Act

The CFA was enacted "to equalize the distribution of power between franchisees and franchisors," specifically, "to prevent a franchisor from unfairly exerting economic leverage over a franchisee." *Hartford Elec. Supply Co. v. Allen-Bradley Co.*, 250 Conn. 334, 345 (1999) (citing *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1180 (2d Cir. 1995)).  Thus, in light of the CFA's "remedial purpose," the Connecticut Supreme Court has instructed that it "should be read broadly in favor of the plaintiff." *Id.*

Relevant here, the CFA provides substantive and procedural safeguards for franchisees. Substantively, the CFA provides that no franchisor shall, directly or through any agent, terminate a franchise agreement "except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement." Conn. Gen. Stat. § 42-133f(a).  A franchisee's material breach of the franchise agreement or a franchisor's "legitimate business need" can constitute good cause for a termination of a franchise agreement within the meaning of the CFA.  *Petereit*, 63 F.3d at 1184; *see also Hartford Elec. Supply Co.*, 250 Conn. at 363.  Procedurally, the CFA provides that a franchisor terminating a franchise agreement "shall give the franchisee written notice of such termination . . . at least sixty days in advance to such termination." Conn. Gen. Stat. § 42-133f(a).

The CFA permits a franchisee to bring an action for damages and injunctive relief against a franchisor for a substantive or procedural violation of the CFA.  Conn. Gen. Stat. § 42-133g(a).  Even if a franchisor has good cause for terminating a franchise agreement, a procedurally defective termination violates the CFA, and the franchisee generally will be entitled to lost profits for the sixty days the termination was in effect without the requisite notice.  *See Petereit*, 63 F.3d at 1186–87; *Sherman St. Assocs., LLC v. JTH Tax, Inc.*, No. 3:03-CV-1875 (CFD), 2011 WL 3837078, at *8 (D. Conn. Aug. 30, 2011).  As the Second Circuit has observed, however, lost profits allegedly resulting from improper termination of the franchise agreement could "threaten the viability" of a business, *Petereit*, 63 F.3d at 1186, and "result in economic disaster for the franchisee."  *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985).  In such a case, the "[m]ajor disruption of a business can be as harmful as its termination and thereby constitute irreparable injury," entitling a plaintiff to injunctive relief.  *Petereit*, 63 F.3d at 1186.  *See also Grand Light & Supply Co.*, 771 F.2d at 677 ("Where the franchisee is completely dependent on the public's confidence in the franchised product for most or all of his business, abrupt severance of the franchise tie, without good cause and without sufficient notice, could spell ruination."); *LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.*, 92 F. Supp. 2d 119, 131 (E.D.N.Y. 2000) (noting that irreparable harm may be assumed when a franchisor "is attempting to terminate an exclusive franchise arrangement on short notice" because the "franchise relationship is the lifeline of the franchisee's business").

## III.    DISCUSSION

The Court concludes, for two reasons, that Plaintiff has failed to demonstrate that it will suffer irreparable harm in the absence of a TRO prior to the hearing scheduled for December 15, 2022.  *See Omnistone Corp.*, 485 F. Supp. 3d at 367 (noting that a plaintiff's "demonstration of

irreparable harm must be considered in conjunction with the time frame involved" in considering a motion for a TRO.  Because "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation and internal quotation marks omitted), Plaintiff's failure to demonstrate irreparable harm warrants denying its motion.

First, Plaintiff has failed to proffer persuasive evidence that it will suffer financial ruin in the absence of a TRO.  In support of its request, Plaintiff has submitted an affidavit from Thomas Brazel, an officer of Plaintiff, stating that termination of the franchise agreement will cause Plaintiff to "suffer economic harm" and that Plaintiff is "almost certain to be driven out of business without help from the Court."  Brazel Aff., ECF No. 6 at 10, ¶¶ 16–17.  The first of these statements—that Plaintiff will suffer economic harm in the event of a termination—is certainly plausible, but does not carry the day because economic harm can be remedied with monetary damages, as discussed below.  The second of Brazel's statements—that Plaintiff is "almost certain to be driven out of business" absent a TRO—is a conclusory statement unsupported by any financial statements, projected profit losses, or other evidence of impending loss.  As relevant to the present motion, Brazel's conclusory statement does substantiate Plaintiff's claim that it will be driven out of business prior to the hearing scheduled for December 15, 2022, which is the time frame at issue here.  *See Omnistone Corp.*, 485 F. Supp. 3d at 367.

Although the Second Circuit recognizes that the termination of franchise agreements can cause irreparable harm in situations where the right to continue a business is "not measurable entirely in monetary terms," *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970), Plaintiff needs to make a some showing, aside from one conclusory statement in a principal's affidavit, that that is the case here.  On the present record, the Court cannot conclude

that this statement, standing alone, enables Plaintiff to meet its burden of showing "actual and imminent" injury. *Shapiro*, 51 F.3d at 332 (citation and internal quotation marks omitted). Indeed, Plaintiff does not even allege that it has been forced to cease operating altogether, as would appear to be required by the terms of the franchise agreement. *See generally* Compl.; Ex. B to Compl., ECF No. 1-1 at 26 (providing that, immediately upon termination, the franchisee must cease operation, no longer represent itself as a franchisee, and cease using Dunkin' Donuts trademarks and products). Rather, Defendant provides evidence, unrefuted by Plaintiff's reply briefing, that, as of November 22, 2022, Plaintiff's restaurant was continuing to operate as Defendant's franchise. Pia Decl., ECF No. 26-1, ¶¶ 28–29 (providing photographs of Plaintiff's restaurant continuing to display the Dunkin' Donuts name and its merchandise, and stating that employees fulfilled an order for drinks and food items as if they were serving approved Dunkin' products). Moreover, although Defendant has attempted to turn off Plaintiff's online customer ordering capacity, Defendant contends that Plaintiff has been able to turn it back on. *Id.* ¶ 26. Thus, Plaintiff has failed to substantiate its claim of imminent "economic disaster" required for the issuance of a TRO. *See Grand Light & Supply Co.*, 771 F.2d at 677; *Torrez v. Semple*, No. 3:17-CV-1223 (SRU), 2017 WL 6624009, at *1 (D. Conn. Dec. 28, 2017) ("Allegations of irreparable harm or claims of a likelihood of success on the merits must be substantiated with evidence in admissible form."); *Gray v. Lamont*, No. 3:21-CV-00143 (VAB), 2021 WL 2044289, at *5 (D. Conn. May 21, 2021) (same).

For its part, Plaintiff contends that Defendant's violation of the CFA constitutes a *per se* demonstration of irreparable harm. ECF No. 15 at 11. None of the cases cited support this proposition, however. Several arise in the context of the Petroleum Marketing Practices Act, which contains a relaxed standard for issuance of preliminary injunctive relief. *See S&F Invs.,*

*LLC v. All. Energy, LLC*, No. 3:21-cv-1577 (JBA), 2022 WL 3019587, at \*2 (D. Conn. July 29, 2022).  Another case concerns a municipality's grant of an exclusive franchise, not a private commercial franchise agreement, and Plaintiff has not demonstrated that those circumstances are analogous.  *See City of Groton v. Yankee Gas Servs. Co.*, 224 Conn. 675, 681 (1993) ("If a statute confers an exclusive franchise, an injunction is appropriate to prevent infringement of the franchise rights.").  Finally, in the trial court decision in *Hartford Electric Supply Co.*, the court found that the plaintiff demonstrated irreparable harm and no adequate remedy at law flowing from the franchise termination, but this was after the parties waived a prompt hearing on a temporary injunction, conducted expedited discovery, and proceeded to a full hearing on the plaintiff's right to a permanent injunction.  *See Hartford Elec. Supply Co. v. Allen-Bradley Co.*, No. CV 96562061S, 1997 WL 297256, at \*14 (Conn. Super. Ct. May 28, 1997), *aff'd*, 250 Conn. 334 (1999).  The trial court there thus had a significantly more robust record on which to base its findings.

In sum, Plaintiff has not produced sufficient evidence that it will suffer financial ruin or other irreparable harm prior to the hearing scheduled for December 15, 2022, due to Defendant's termination of the franchise agreement.

Second, to the extent Plaintiff has demonstrated some harm, it is not the sort of harm that warrants injunctive relief because an adequate remedy at law exists.  Plaintiff has demonstrated some degree of success on the merits with respect to only one claimed CFA violation, specifically,

that Defendant failed to comply with the CFA's sixty-day notice requirement.[3]  *See* Conn. Gen. Stat. § 42-133f(a) (requiring a franchisor to "give the franchisee written notice of such termination . . . at least sixty days in advance to such termination"); *Sherman St. Assocs., LLC*, 2011 WL 3837078, at *8 (finding that a franchisor's notices to cure did not satisfy the CFA's sixty-day notice requirement because they constituted only "notice of *possible* termination in the event that" the franchisee continued breaching its obligations under the franchise agreement) (emphasis in original).  When a franchisor fails to afford the required sixty-day notice, however, the appropriate remedy is generally limited to the franchisee's lost profits for the time period the termination was in effect without the proper notice.  *Petereit*, 63 F.3d at 1186–87 (holding that, because "the remedy is restricted to making the [franchisees] whole for the violation of the procedural provisions of" the CFA, including the notice provision, the franchisees were "entitled to damages for lost profits during the time the [termination] was in effect without the requisite notice"); *McKeown Distribs., Inc. v. GYP-Crete Corp.*, 618 F. Supp. 632, 643 (D. Conn. 1985) (reasoning that a franchisor's violation of the CFA's notice provision "at most would entitle [the franchisee] to recover lost profits for the . . . days it would have been in operation prior to the date that termination would be permitted under the [CFA]"); *Sherman St. Assocs., LLC*, 2011 WL 3837078,

---

[3] Although Plaintiff's complaint alleges two other violations of the CFA, neither supports Plaintiff's present motion for a TRO.  First, the complaint alleges that the termination lacked good cause.  Compl. ¶ 17.  In the pending motions, however, Plaintiff expressly contends that it does not rely on the CFA's substantive protections in seeking injunctive relief.  *See* ECF No. 15 at 8 (arguing that "[t]here will be a time and place to argue" whether Defendant has violated the substantive protections of the CFA, but "it is unnecessary to do so" at the preliminary injunction stage).  Second, the complaint alleges that the termination notice is "defective on its face" because it was issued by "Dunkin' Donuts *Franchisor* LLC," a distinct entity from Defendant, "Dunkin' Donuts *Franchising*, LLC," the party to the franchise agreement.  Compl. ¶¶ 15–16.  But other evidence in the termination notice supports Defendant's contention that this was merely a scrivener's error, such as the correct reference to the parties' franchise agreement, the default notice dated July 29, 2022, and the Food Safety Review dated October 10, 2022.  Plaintiff has provided no evidence that it lacked meaningful notice of the termination in light of this error, nor has it provided citation to a legal authority suggesting that a scrivener's error could render a termination notice procedurally invalid under the CFA.  None of the authorities Plaintiff cites in support of its contention that termination notices are to be strictly construed, to the extent they support that proposition, arise in the scrivener's error context.  Thus, based on the record before the Court at this time, Plaintiff has not demonstrated likelihood of success, or serious questions, on the merits of those alleged violations of the CFA, and they cannot support its claim for a TRO.

at *8 (concluding that, "[a]s a remedy for [the franchisor's] violation of the CFA, [the franchisee] is entitled only to recover lost profits for the sixty days the termination was in effect without the requisite notice").[4]  Because an adequate remedy exists at law in the form of monetary damages, at least on the present record, any injury suffered by Plaintiff as a result of Defendant's failure to comply with the CFA's sixty-day notice provision is not truly "irreparable" as required to warrant issuance of a TRO.  *Moore*, 409 F.3d at 510; *Shapiro*, 51 F.3d at 332.

Given its holding that Plaintiff has failed to show irreparable harm, the Court does not reach the questions of whether the balance of hardships tips decidedly in its favor or whether the public interest is served by issuance of a injunctive relief.  *See Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 230 (D. Conn. 2020) (declining to consider other requirements for a preliminary injunction where the plaintiff had not demonstrated a likelihood of success on the merits).

Finally, the Court notes that its findings on Plaintiff's application for a TRO do not represent a final determination of the merits of the factual or legal disputes at issue.  *United States v. Atl. Richfield, Co.*, 297 F. Supp. 1060, 1061 (S.D.N.Y. 1969) (noting that the reasons for issuing a TRO "do not constitute an adjudication on the merits of any of the factual or legal issues that

---

[4] In its reply brief, Plaintiff attempts to analogize this case to *Paradise Foods, Inc. v. Louise's Own, Inc.*, No. 3:96-CV-2279 (DJS) (D. Conn. Mar. 31, 1997), ECF No. 27 at 9.  In that case, another court in this district found that, although the termination of a franchise agreement was based on good cause, the franchisor's initial termination notice did not comply with the CFA's sixty-day notice requirement, and its later attempt to extend the notice period did not cure the issue.  *Id.* at 15, 17.  Accordingly, the court issued a permanent injunction to enjoin the franchisor from terminating the franchise agreement based on the defective notice.  *Id.* at 18.  The Court finds *Paradise Foods* inapplicable to the present motion for two reasons.  First, *Paradise Foods* concerned the issuance of a permanent injunction on a full evidentiary record, not the issuance of a TRO on a limited evidentiary record.  Second, when concluding that the franchisee would suffer irreparable harm from the termination of the franchise agreement, the court in *Paradise Foods* did not consider whether a monetary award could have redressed the franchisee's injury, which would obviate the need for injunctive relief.  *JSG Trading Corp.*, 917 F.2d at 79 ("Irreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue.").  Thus, while *Paradise Foods* may have relevance to the issue of compliance with the CFA's notice requirement, it does not counsel in favor of granting Plaintiff's motion for a TRO at this stage of the case.

may come before the Court upon . . . the trial of the action"); *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Ry. Lab. Conf.*, 310 F. Supp. 904, 905 (D.D.C. 1970) (recognizing that expressing an opinion on the merits of the case is "not the function of the Court in passing on an application for a temporary restraining order"); 11A Wright & Miller, Fed. Prac. & Proc. § 2951 (3d ed. 1998).

## IV.    CONCLUSION

For the reasons described above, Plaintiff's motion for a temporary restraining order, ECF No. 19, is DENIED.  The Court will consider evidence at the hearing on the pending motion for a preliminary injunction scheduled for December 15, 2022.  In advance of that hearing, by **December 12, 2022,** each party shall file a list of witnesses and exhibits it intends to proffer at the hearing.  Also by that date, each party shall submit three courtesy copies of all exhibits to the chambers of the undersigned.

**SO ORDERED** at Hartford, Connecticut, this 30th day of November, 2022.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE